If you make a timely request for Personal Benefits, your Personal Benefits, except for Personal Optional Life Benefits, will become effective on the later of:

1.    your Personal Benefits Eligibility Date; and

2.    the date of your request;

provided you are Actively at Work on that date, otherwise on the date you return to Active Work as an Employee.

Your Personal Optional Life Benefits will become effective on the later of:

1.    your Personal Benefits Eligibility Date; and

2.    the date of your request;

subject to the Work Requirements.

If, on the date you would have become covered under This Plan for Personal Optional Life Benefits, you:

1.    were Hospitalized in the ninety days prior to the date you make a request for Personal Optional Life Benefits under This Plan; or

2.    are then Hospitalized;

then evidence of your good health must be given to us.

**C.   If Late Request Is Made**

If a request is not a timely request, it is a late request.

If you make a late request for Personal Benefits, evidence of your good health must be given to us.

If you make a late request for Personal Benefits, evidence of your good health must be given to us.

**D.   Evidence of Good Health**

The evidence of good health is to be given at your expense.

Your Personal Benefits will become effective on the date such evidence of good health is accepted by us as satisfactory, subject to the Work Requirements.

If the evidence of your good health is not accepted by us as satisfactory, you will not be covered for any Personal Benefits.

**E.   Evidence of Good Health- For Late Requests**

The evidence of good health is to be given at your expense.

Your Personal Benefits will become effective on the date such evidence of good health is accepted by us as satisfactory, subject to the Active Work Requirement.

If the evidence of your good health is not accepted by us as satisfactory, you will not be covered for any Personal Benefits.

**F.   Active Work Requirement**

You must be Actively at Work as an Employee in order for your Personal Benefits to become effective. If you are not Actively at Work as an Employee on the date when your Personal Benefits would otherwise become effective, your Personal Benefits will become effective on the date of your return to Active Work as an Employee.

**G.   Work Requirements**

For Optional Life Benefits, you must satisfy the Work Requirements in order for your Personal Optional Life Benefits to become effective. If you have not satisfied the Work Requirements on the date when your Personal Optional Life Benefits would otherwise become effective, these benefits will become effective on the first day after you satisfy the Work Requirements.

**H.   Reinstatement of Benefits**

If your Personal Benefits end because you do not make a required contribution to their cost, you may make a request to reinstate them. Such a request will be treated as if it were a late request in order to determine the effective date of your Personal Benefits.

Form G.23000-D1

---

## EFFECTIVE DATES OF DEPENDENT BENEFITS

**A.   Request Forms**

You must make a written request to the Employer for Dependent Benefits. The request forms will be given to the Employer by us.

**B.   If Timely Request Is Made**

A timely request is one that is made on or prior to the date thirty one days after your Dependent Benefits Eligibility Date. If you are not Actively at Work as an Employee on your Dependent Benefits Eligibility Date, a request will be timely if it is made on or prior to the date thirty one days after the date you return to Active Work as an Employee.

If you make a timely request for Dependent Benefits, your Dependent Benefits will become effective on the latest of:

1.   your Dependent Benefits Eligibility Date; and

2.   the effective date of your Personal Benefits; and

3.   the date of your request.

If, on the date you would have become covered under This Plan for Life Benefits (On Account of Dependents), a Dependent:

1.  has been Hospitalized in the 90 days prior to the date you make a request for Life Benefits (On Account of Dependents) under This Plan; or

2.  is then Hospitalized; or

3.  is not then able to perform Normal Activities;

then evidence of the good health of each such Dependent must be given to us.

## C.  If Late Request Is Made

If a request is not a timely request, it is a late request.

If you make a late request for Dependent Benefits, evidence of the good health of each of your Dependents must be given to us.

## D.  Evidence of Good Health

The evidence of good health is to be given at your expense. Your Dependent Benefits will become effective for each such Dependent for whom evidence of good health must be given to us on the later of:

1.  the date the evidence of the good health of such Dependent is accepted by us as satisfactory; and

2.  the effective date of your Personal Benefits.

If the evidence of the good health of any person is not accepted by us as satisfactory, such person:

1.  will be deemed not to be a Dependent for the purpose of Dependent Benefits; and

2.  will not be covered for Dependent Benefits.

## E.  Reinstatement of Benefits

If your Dependent Benefits end because you do not make a required contribution to their cost, you may make a request to reinstate them. Such a request will be treated as if it were a late request in order to determine the effective date of your Dependent Benefits.

## F.  New Dependents

Dependent Benefits with respect to a person who becomes your Dependent while you are covered for Dependent Benefits will be effective on the date such person becomes your Dependent, subject to all provisions herein.

Form G.23000-D2

## LIFE BENEFITS
### (On Your Own Account)

A.  Coverage

If you die while you are covered for Life Benefits, we will pay to the Beneficiary the amount of Life Benefits that is in effect on your life on the date of your death.

B.  Optional Types of Payment

Payment of any amount of Life Benefits may be made in installments. Details on the payment options may be obtained from the Employer.

C.  Suicide Provision (Applicable to Optional Life Benefits)

Optional Life Benefits will not be paid to the Beneficiary if you commit suicide, while sane or insane, within 2 years from the effective date of this certificate. Instead we will pay the Beneficiary an amount equal to any contributions paid, without interest.

If you commit suicide, while sane or insane, more than 2 years after the effective date of this certificate, but within 2 years from the effective date of any increase in the amount of your Optional Life Benefits, such increased amount will not be paid to the Beneficiary. Instead we will pay the Beneficiary:

1.  an amount equal to all contributions paid for the increased amount, without interest; plus

2.  an amount equal to the amount of Optional Life Benefits that was in effect on the day before the effective date of such increased amount.

Form G.23000-1

## ACCELERATED BENEFITS
### (On Your Own Account)

A.  **Definitions**

"**Meet the Requirements**" means:

1.  your life span is drastically limited; and

2.  you are expected to die within 6 months; and

3.  you are not expected to recover.

These must be certified by a Doctor and accepted by us.

B.  **Coverage**

We will pay Accelerated Benefits to you if:

1.  you are less than 63 years old when you apply for Accelerated Benefits; and

2.  you apply for Accelerated Benefits while your Life Benefits are in effect; and

3.  you Meet the Requirements while you are covered for Life Benefits; and

4.  you or your legal representative requests payment of Accelerated Benefits while your Life Benefits are in effect.

Accelerated Benefits are payable only once.

Payment of Accelerated Benefits will reduce your Life Benefits and the amount available for you to convert to a personal policy of life insurance under RIGHT TO OBTAIN A PERSONAL POLICY OF LIFE INSURANCE ON YOUR OWN LIFE.

C.  **Proof**

Accelerated Benefits will be payable when we receive proof that you Meet the Requirements.

Proof must be given to us. The proof must be in a form that is satisfactory to us. We have no duty to ask for any proof. Any delay in submitting proof will not cause a claim to be denied so long as the proof is given as soon as reasonably possible.

At the time that such proof is given, we may have you examined by Doctors of our choice, at our expense.

### D. Amount

The amount of Accelerated Benefits payable is:

1.   up to 50% of your Life Benefits as shown in the SCHEDULE OF BENEFITS

REDUCED BY

a discount for the mortality and interest (*) for the actuarially determined life span, and

MINUS

an administrative charge; and

2.   determined as of the date we accept certification that you Meet the Requirements; and

3.   no more than $250,000.

(*)   The interest rate used shall be the Moody's Corporate Bond Yield Averages - Monthly Average Corporates - published by Moody's Investors Service, Inc., or any successor thereto for the calendar month ending two months before the date you apply for an Accelerated Benefit.

If your Life Benefits are scheduled to reduce within six months of such certification date, we will, for the purpose of determining the amount of Accelerated Benefits, deem the amount of your Life Benefits to have already been reduced on such certification date.

After payment of the Accelerated Benefits, the amount of your Life Benefits will be:

1.   the amount of Life Benefits actually in effect on the certification date; less

2.   the amount of Accelerated Benefits requested.

When the scheduled reduction date occurs, the amount of your Life Benefits will be reduced. The amount of such reduction will be determined by applying the percentage in accordance with the provisions of This Plan to the amount of your Life Benefits actually in effect on the certification date.

After such scheduled reduction, the amount of your Life Benefits will be the amount of your Life Benefits actually in effect on the certification date:

REDUCED BY

the amount of such scheduled reduction; and

MINUS

the amount of Accelerated Benefits requested.

Accelerated Benefits will be payable if you are living when payment is made.

E. **Exclusions**

Accelerated Benefits will not be payable if:

1. you have assigned your Life Benefits (see Assignment provision under SCHEDULE SUPPLEMENT); or

2. we have been notified that all or a portion of your Life Benefits are to be paid to your former spouse as part of a divorce agreement; or

3. you Meet the Requirements as a result of:

   a. attempted suicide; or

   b. injuring yourself on purpose; or

   c. alcohol or drug abuse; or

   d. a war, or a warlike action in time of peace; or

   e. any event occurring while you are in violation of criminal law; or

4. the amount of your Life Benefits is less than $10,000.


Form G.23000-36

---

# CONTINUED DEATH BENEFITS
# DURING TOTAL DISABILITY

---

A. **Coverage**

If you cease to be Actively at Work as an Employee due to Total Disability, your Life Benefits may be continued for up to 12 months. For this to occur, your Employer must deem you to be Actively at Work and must continue to make premium payments for your Life Benefits. Your Life Benefits will end once you have ceased to be Actively at Work as an Employee due to Total Disability for 12 months. Death Benefits may be payable after your Life Benefits end in certain cases of Total Disability. We will pay Death Benefits to your Beneficiary if:

1. you become Totally Disabled before your Life Benefits end; and

2. your Total Disability starts for Basic Life Benefits while you are covered for such benefits and for Optional Life Benefits after you have been covered for such benefits for one year; and

3. you are less than 60 years old when you become Totally Disabled; and

4. you continue to be Totally Disabled after your Life Benefits end and until the date of your death; and

5. the required proof is submitted to us.

However, no Death Benefits are payable if a death benefit is payable under RIGHT TO OBTAIN A PERSONAL POLICY OF LIFE INSURANCE ON YOUR OWN LIFE.

**B.   Proof of Claim**

The Death Benefits will be payable when we receive proof of your death if:

1.   we have received proof of your Total Disability no later than 12 months after the date you ceased to be Actively at Work because of Total Disability. This proof must establish that your Total Disability had continued for at least six months from the date you were last Actively at Work; and

2.   you submit further proof, when we ask for it, that you continue to be Totally Disabled. We will not ask for such proof more than once a year; and

3.   upon your death proof that Total Disability continued to the date of your death is given to us.

If you die within a year after your Life Benefits ended and before any proof has been given, then proof that your Total Disability continued to the date of your death must be given to us. This proof must be given within one year of your death.

All proofs must be given to us. The proofs must be in a form that is satisfactory to us. We have no duty to ask for any proof. If any proof is not given on time, the delay will not cause a claim to be denied so long as the proof is given as soon as reasonably possible.

At any time that proof of your Total Disability is given, we may have you examined by Doctors of our choice, at our expense.

**C.   Amount**

The amount of Death Benefits is the amount shown in the SCHEDULE OF BENEFITS.

**D.   Termination**

Your Death Benefits will end on:

1.   the date you are no longer Totally Disabled; or

2.   the date you do not give us proof of Total Disability when required.

**E.   One Payment Only**

If we have issued a personal policy under RIGHT TO OBTAIN A PERSONAL POLICY OF LIFE INSURANCE ON YOUR OWN LIFE, we will pay Death Benefits only if that policy is returned to us without any claim. In such case an amount equal to the premiums paid on the personal policy will be given to the Beneficiary.

Form G.23000-1B1-A

## RIGHT TO OBTAIN A PERSONAL POLICY
## OF LIFE INSURANCE ON YOUR OWN LIFE

**A. Application**

We will issue a personal policy of life insurance without disability or accidental death benefits to you if you apply for it in writing during the Application Period. The Application Period is the 31 day period after:

1. the date your Life Benefits end because your employment ends or because you are no longer in a class which remains eligible for Life Benefits; or

2. the date your Life Benefits end because This Plan ends, but only if your Life Benefits under This Plan have been in effect for at least 5 years; or

3. the date This Plan is changed to end the Life Benefits for your class, but only if your Life Benefits under This Plan have been in effect for at least 5 years.

4. the date your Death Benefits end under CONTINUED DEATH BENEFITS DURING  if you do not then again become eligible for Life Benefits under This Plan.

Proof that you are insurable is not required by us.

**B. Conditions**

The personal policy will be issued to you subject to these conditions:

1. it will be on one of the forms then usually issued by us, except term insurance; and

2. it will not take effect until after the Application Period ends; and

3. the premium for the policy will be based on:

   a. the class of risk to which you belong; and

   b. your age on the effective date of the policy; and

   c. the form and amount of the policy; and

4. if item A(1) applies to you, the amount of the policy will not be more than the amount of your Life Benefits on the date the Life Benefits end; and

5. if item A(2) or item A(3) applies to you, the amount of the policy will not be more than the lesser of:

   a. the amount of your Life Benefits on the date the Life Benefits end, less any amount of life insurance for which you may be eligible under any group policy which takes effect within 31 days after your Life Benefits end; and

   b. $2,000.

**C.  If You Die During the Application Period**

If you die during the Application Period, we will pay a death benefit to the Beneficiary. The amount of the death benefit will be the highest amount of life insurance pursuant to item B(4) or B(5) for which a personal policy could have been issued. This death benefit will be paid even if you did not apply for a personal policy.

If you could have applied for a policy under item A(4) and you die within one year after your Life Benefits end, we must, within one year after your death, be given proof that:

1.   your Total Disability had continued from the date your Life Benefits ended to within 31 days of the date of your death; and

2.   your death occurred during the Application Period which applies to item A(4).

Form G.23000-1A

---

# LIFE BENEFITS
## (On Account of Dependents)

---

**A.  Coverage**

If a Dependent dies while Life Benefits are in effect for that Dependent, we will pay the amount of Life Benefits that is in effect for that Dependent on the date of that Dependent's death.

**B.  Payment of Benefits**

The benefits will be paid to you if you survive the Dependent. The benefits will be paid to your estate if:

1.   that Dependent dies at the same time your death occurs; or

2.   that Dependent dies within 24 hours of your death.

In any other instance the benefits will be paid to the Dependent's estate; or we may instead pay all or part of the benefits to one or more of the following persons who are related to that Dependent and who survive that Dependent:

    **a.** parent;    **c.** brother and sister.

    **b.** child;

Any payment will discharge our liability for the amount so paid.

**C.  Optional Types of Payment**

Payment of any amount of Life Benefits may be made in installments instead of one sum. Details on the payment options may be obtained from the Employer.

**D. Suicide**

Life Benefits (On Account of Dependents) will not be paid if a Dependent commits suicide, while sane or insane, within 2 years from the effective date of this certificate. Instead we will pay an amount equal to any contributions paid, without interest, as set forth in Section B, Payment of Benefits.

If a Dependent commits suicide, while sane or insane, more than 2 years after the effective date of this certificate, but within 2 years from the effective date of any increase in the amount of Life Benefits (On Account of Dependents), such increased amount will not be paid. Instead we will pay:

a.  an amount equal to all contributions paid for the increased amount, without interest, plus

b.  an amount equal to the amount of Life Benefits (On Account of Dependents) that was in effect on the day before the effective date of such increased amount,

as set forth in Section B, Payment of Benefits.

Form G.23000-7C

---

# RIGHT TO OBTAIN A PERSONAL POLICY
# OF LIFE INSURANCE ON THE LIFE
# OF A DEPENDENT

---

**A. Application**

We will issue a personal policy of life insurance without disability or accidental death benefits to a Dependent if that Dependent applies for it in writing during the Application Period. The Application Period is the 31 day period after the date the Life Benefits on that Dependent end because:

1.  your employment ends or you are no longer in a class which remains eligible for Dependent Life Benefits; or

2.  This Plan ends, but only if the Life Benefits on that Dependent had been in effect under This Plan for at least 5 years; or

3.  This Plan is changed to end the Dependent Life Benefits for your class, but only if the Life Benefits on that Dependent had been in effect under This Plan for at least 5 years; or

4.  you die; or

5.  the Dependent no longer qualifies as a Dependent as defined in DEFINITIONS OF CERTAIN TERMS USED HEREIN.

Proof that the Dependent is insurable is not required by us.

**B. Conditions**

The personal policy will be issued to the Dependent subject to these conditions:

1.  it will be on one of the forms then usually issued by us, except term insurance; and

2.  it will not take effect until after the Application Period ends; and

3.  the premium for the policy will be based on:

    a.  the class of risk to which the Dependent belongs; and

    b.  the Dependent's age on the effective date of the policy; and

    c.  the form and the amount of the policy; and

4.  if item A(2) or A(3) applies to the Dependent, the amount of the policy will not be more than the lesser of:

    a.  the amount of Life Benefits on that Dependent on the date the Life Benefits end, less any amount of life insurance on the life of that Dependent for which you or the Dependent may be eligible under any group policy which takes effect within 31 days after the Life Benefits on that Dependent end; and

    b.  $2,000; and

5.  if an item in paragraph A, other than item A(2) or A(3), applies to the Dependent, the amount of the policy will not be more than the amount of Life Benefits on that Dependent on the date the Life Benefits end.

**C. If the Dependent Dies During the Application Period**

If the Dependent dies during the Application Period, we will pay a death benefit. The payment of the death benefit will be in the same manner as if the Life Benefits on that Dependent had been in effect on the date of that Dependent's death. The amount of the death benefit will be the highest amount of life insurance, pursuant to item B(4) or B(5) for which a personal policy could have been issued. This death benefit will be paid even if the Dependent did not apply for a personal policy.

Form G.23000-7A

---

## ACCIDENTAL DEATH OR DISMEMBERMENT BENEFITS

---

**A.  Coverage**

We will pay Accidental Death or Dismemberment Benefits for a Covered Loss shown in Section C if you are injured in an accident which occurs while you are covered for Accidental Death or Dismemberment Benefits; and if:

1.  that accident is the sole cause of the injury; and

2.  that injury is the sole cause of that Covered Loss; and

3.  that Covered Loss occurs not more than one year after the date of that accident.

In addition, we will pay an amount equal to 10% of the Full Amount shown in section B for the loss of your life that results from injuries sustained while driving or riding in a private Passenger Car if your Seat Belt was properly fastened; but the amount payable will not: (a) exceed $25,000; nor (b) be less than $1,000.

"Passenger Car" means any validly registered four-wheel private Passenger Car. It does not include:

1.  any commercially licensed car; or

2.  a private Passenger Car which is being used for commercial purposes.

"Seat Belt" means:

    a.  any child restraint device which meets the definition of the state law; or

    b.  any other restraint device which:

        i.  meets published federal safety standards;

        ii.  has been installed by the car manufacturer; and

        iii.  has not been altered after such installation.

The correct position of the Seat Belt must be certified by the investigating officer. A copy of the police report must be submitted with the claim.

We will not pay this benefit if you were driving while under the influence of alcohol or drugs.

**B.  Maximum Benefit for All Covered Losses in Each Accident**

For all Covered Losses caused by all injuries which you sustain in one accident not more than the Full Amount will be paid.

Full Amount means the amount of Accidental Death or Dismemberment Benefits for which you are covered on the date of your accident.

C.  Table of Covered Losses and Benefit Amounts

| Covered Losses (Subject to Exclusions) | Benefit Amounts |
|---|---|
| Life | Full Amount |
| A hand | One-half of the Full Amount |
| A foot | One-half of the Full Amount |
| Sight of an eye | One-half of the Full Amount |
| Any combination of a hand, a foot or sight of an eye | Full Amount |
| Thumb and Index finger of same hand | One-quarter of the Full Amount |
| Speech and hearing | Full Amount |
| Speech or hearing in both ears | One-half of the Full Amount |
| Quadriplegia | Full Amount |
| Paraplegia | One-half of the Full Amount |
| Hemiplegia | One-half of the Full Amount |

Loss of sight of an eye means that the eye is entirely blind and that no sight can be restored in that eye.

Loss of a hand means that all of the hand is cut off at or above the wrist.

Loss of a foot means that all of the foot is cut off at or above the ankle.

Loss of thumb and index finger means actual severance through or above the third joint from the tip of the index finger and the second joint from the tip of the thumb.

Loss of speech and hearing means the entire and irrecoverable loss which has lasted continuously for 12 consecutive months following the injury.

Quadriplegia means total paralysis of both upper and lower limbs.

Paraplegia means total paralysis of both lower limbs.

Hemiplegia means total paralysis of upper and lower limbs on one side of the body.

Paralysis means loss of use, without severance, of a limb. Paralysis must be determined by competent medical authority to be permanent, complete and irreversible.

D.  **Exclusions**

We will not pay for any Covered Loss shown in Section C if it in any way results from, or is caused or contributed to by:

1.   physical or mental illness, diagnosis of or treatment for the illness; or

2.   an infection, unless it is caused by an external wound that can be seen and which was sustained in an accident; or

3.   suicide or attempted suicide; or

4.   injuring oneself on purpose; or

23

5.   the use of any drug or medicine; or

6.   a war, or a warlike action in time of peace, including terrorist acts; or

7.   committing or trying to commit a felony or other serious crime or an assault; or

8.   any poison or gas, voluntarily taken, administered or absorbed; or

9.   service in the armed forces of any country or international authority, except the United States National Guard; or

10.  operating, learning to operate, or serving as a member of a crew of an aircraft; or while in any aircraft operated by or under any military authority (other than the Military Airlift Command); or while in any aircraft being used for a test or experimental purposes; or while in any aircraft used or designed for use beyond the Earth's atmosphere; or while in any aircraft for the purpose of descent from such aircraft while in flight (except for self preservation); or

11.  driving a vehicle while intoxicated as defined by the laws of the jurisdiction in which the vehicle was being operated.

The above listed exclusions also apply to the Voluntary (Additional) Accidental Death or Dismemberment Benefits described in section G.

## E.   Payment of Benefits

The Accidental Death or Dismemberment Benefits for a Covered Loss will be paid when we receive notice and satisfactory proof of that loss.

Accidental Death or Dismemberment Benefits will be paid:

1.   to your Beneficiary for the loss of your life; and

2.   to you for any other Covered Loss sustained by you.

Benefits for Voluntary (Additional) Accidental Death or Dismemberment Benefits will be paid in accordance with the provisions of section G.

## F.   Optional Types of Payment

Payment of any amount of Accidental Death or Dismemberment Benefits for loss of life may be made in installments. Details on the payment options may be obtained from the Employer.

## G.   Voluntary (Additional) Accidental Death or Dismemberment Benefits

We will pay Voluntary (Additional) Accidental Death or Dismemberment Benefits for a covered loss shown below if you are injured in an accident which occurs while you are covered for Voluntary (Additional) Accidental Death or Dismemberment Benefits on your own account; and

a.   that accident is the sole cause of the injury; and

b.   that injury is the sole cause of that Covered Loss; and

c.   that Covered Loss occurs not more than one year after the date of that accident.

24

1. **Exposure Benefit**

   We will pay an amount equal to the Full Amount, shown in section B above, for the loss of your life if:

   a. such loss of life results from unavoidable exposure to the elements; and

   b. after one year, your body has not been found after the conveyance in which you were traveling:

      i. disappeared;

      ii. made a forced landing;

      iii. sank; or

      iv. was wrecked.

2. **Seat Belt Benefit**

   We will pay an amount equal to 10% of the Full Amount shown in section B for the loss of your life that results from injuries sustained while driving or riding in a private Passenger Car if your Seat Belt was properly fastened; but the amount payable will not: (a) exceed $25,000; nor (b) be less than $1,000.

   Passenger Car means any validly registered four-wheel private Passenger Car. It does not include:

   a. any commercially licensed car; or

   b. a private Passenger Car which is being used for commercial purposes.

   Seat Belt means:

   a. any child restraint device which meets the definition of the state law; or

   b. any other restraint device which:

      i. meets published federal safety standards;

      ii. has been installed by the car manufacturer; and

      iii. has not been altered after such installation.

   The correct position of the Seat Belt must be certified by the investigating officer. A copy of the police report must be submitted with the claim.

   We will not pay a Seat Belt Benefit if you were driving while under the influence of alcohol or drugs.

3. **Hospital Benefit**

   If, as a result of an accident, you are confined in a Hospital, we will pay during such confinement, after a four day waiting period a monthly amount equal to 1% of the Full Amount shown in section B, but not more than $2,500 per month.

   In no case will such benefit be payable for:

   a. the first four days of a Hospital confinement; or

   b. more than 12 months during a period of Hospital confinement.

   Payments for periods less than a full month will be made on a pro-rata basis.

4.   Child Care Center Benefit

If you die as a result of an accident, we will pay on account of each Dependent child who:

**a.**   is 12 years of age or under on the date of the accident; and

**b.**   was enrolled in a Child Care Center on the date of the accident;

an annual amount equal to the lesser of:

**a.**   3% of the Full Amount shown in Section B; and

**b.**   the actual amount of Child Care Center Benefit costs incurred;

however, in no event will such amount be more than $5,000 per year.

The Child Care Center Benefit is payable for a maximum of four consecutive years as long as the Dependent child remains:

**a.**   enrolled in a Child Care Center; and

**b.**   12 years of age or under.

If there are no Dependent children who qualify for the Child Care Center Benefit on the date of your death, we will pay an additional benefit of $1,000 to your Beneficiary.

Child Care Center means a facility which:

**a.**   is operated and licensed according to state law, and

**b.**   provides care and supervision for children in a group setting on a regular, daily basis.

Child Care Center Benefits will be paid to any person or persons who have incurred Child Care Center expenses on account of the Dependent child.

5.   Payment of Voluntary (Additional) Accidental Death or Dismemberment Benefits

The Voluntary (Additional) Accidental Death or Dismemberment Benefits for a covered loss will be paid when we receive notice and satisfactory proof of that loss. However, the Child Care Benefit will be payable on a quarterly basis, with the first quarter beginning on the first day of the month following the date of your death, and with the first benefit being payable at the end of the first quarter.

All other Voluntary (Additional) Accidental Death or Dismemberment Benefits will be paid to:

**a.**   your Beneficiary for the loss of your life; and

**b.**   you for any other Covered Loss sustained by you.

Form G.23000-4L

## BENEFICIARY

**A. Your Beneficiary**

The "Beneficiary" is the person or persons you choose to receive any benefit payable because of your death.

You make your choice in writing on a form approved by us. This form must be filed with the records for This Plan.

You may change the Beneficiary at any time by filing a new form with the Employer. You do not need the consent of the Beneficiary to make a change. When the Employer receives a form changing the Beneficiary, the change will take effect as of the date you signed it. The change of Beneficiary will take effect even if you are not alive when it is received.

A change of Beneficiary will not apply to any payment made by us prior to the date the form was received by the Employer.

Your choice of a Beneficiary for a personal policy issued under RIGHT TO OBTAIN A PERSONAL POLICY OF LIFE INSURANCE ON YOUR OWN LIFE will be effective for This Plan.

**B. More Than One Beneficiary**

If, when you die, more than one person is your Beneficiary, they will share in the benefits equally, unless you have chosen otherwise.

**C. Death of a Beneficiary**

A person's rights as a Beneficiary end if:

1. that person dies before your death occurs; or

2. that person dies at the same time your death occurs; or

3. that person dies within 24 hours of your death.

The share for that person will be divided among the surviving persons you have named as Beneficiary, unless you have chosen otherwise.

**D. No Beneficiary at Your Death**

If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to your estate. However, we may instead pay all or part of that amount to one or more of the following persons who are related to you and who survive you:

    1. spouse;    3. parent;

    2. child;    4. brother and sister.

Any payment will discharge our liability for the amount so paid.

Form G.23000-G

## CLAIM PROCEDURE FOR
## ACCIDENTAL DEATH OR DISMEMBERMENT BENEFITS

**A.  When Notice of Claim Must be Given**

Written notice of a claim must be given to us for Accidental Death or Dismemberment Benefits within 20 days after the date of the accident which caused the loss.

**B.  Claim Forms**

When we receive written notice of a claim, we may furnish printed forms for filing proof of the claim. If we do not furnish printed forms within 15 days after you give us notice, you must furnish your own form of proof in writing.

Proof must describe the event, the nature and the extent of the cause for which a claim is made; it must be satisfactory to us.

**C.  When Proof of Claim Must Be Given**

Written proof of a claim must be given to us not later than 90 days after the date of the loss, in the case of Accidental Death or Dismemberment Benefits.

**D.  Late Notice or Proof**

If notice or proof is not given on time, the delay will not cause a claim to be denied or reduced as long as the notice or proof is given as soon as possible.

**E.  Time Limits on Starting Lawsuits**

No lawsuit may be started to obtain benefits until 60 days after proof is given.

No lawsuit may be started more than 3 years after the time proof must be given.

**F.  Medical Examinations**

While a claim is pending, we, at our expense, have the right to have you examined by Doctors of our choice when and as often as we reasonably choose.

**G.  Autopsy**

If Accidental Death or Dismemberment Benefits are claimed, we, at our expense, have, in the case of death, the right to have an autopsy made where it is not against the law.

Form G.23000-H3

## WHEN BENEFITS END

A.  All of your benefits will end on the last day of the calendar month in which your employment ends. Your employment ends when you cease Active Work as an Employee. However, for the purpose of benefits, the Employer may deem your employment to continue for certain absences. See CONDITIONS UNDER WHICH YOUR ACTIVE WORK IS DEEMED TO CONTINUE.

B.  If This Plan ends in whole or in part, your benefits which are affected will end.

C.  Your Dependent Life Benefits will end on the earliest of:

    1.  with respect to your Dependent spouse, the date such Dependent spouse attains age 70; or

    2.  the date that the Dependent ceases to be your Dependent; or

    3.  the date you retire, as determined by the Employer; or

    4.  the date of your death.

D.  If a Covered Person does not make a payment which is required by the Employer to the cost of any benefits, those benefits will end; they will end on the last day of the period for which a payment required by the Employer was made.

The end of any type of benefits on account of a Covered Person will not affect a claim which is incurred before those benefits ended.

Form G.23000-F

## CONDITIONS UNDER WHICH YOUR ACTIVE
## WORK IS DEEMED TO CONTINUE

If you are not Actively at Work as an Employee because of a situation set forth below, the Employer may deem you to be in Active Work as an Employee only for the purpose of continuing your employment and only for the periods specified below in order that certain of your benefits under This Plan may be continued.

All such benefits will be subject to prior cessation as set forth in WHEN BENEFITS END.

In any case, the benefits will end on:

1.  the date the Employer notifies us that your benefits are not to be continued; or

2.  the end of the last period for which the Employer has paid premiums to us for your benefits.

## Your Sickness or Injury, Your Leave of Absence, Your Lay Off

With respect to all Personal Benefits and all Dependent Benefits, the period determined in accordance with the Employer's general practice for an Employee in your job class. However, the period will not be longer than two months following the date the leave of absence or layoff begins.

However, in the event the leave qualifies under the Family and Medical Leave Act of 1993 (FMLA), the period cannot be longer than 12 weeks in any 12 month period following the date the leave of absence begins.

Form G.23000-L

---

## NOTICES

---

This certificate is of value to you. It should be kept in a safe place. Your Beneficiary should know where the certificate is kept.

As soon as your benefits end, you should consult your Employer to find out what rights, if any, you may have to continue your protection.

**Our Home Office is located at One Madison Avenue, New York, New York 10010.**

Form G.23000-E

THIS PAGE IS INTENTIONALLY BLANK

# ERISA INFORMATION

## NAME OF THE PLAN

Park Place Entertainment Corporation Employee Benefit Plan, ("Plan").

## NAME AND ADDRESS OF EMPLOYER AND PLAN ADMINISTRATOR

Park Place Entertainment Corporation
3930 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 699-5000

## EMPLOYER IDENTIFICATION NUMBER AND PLAN NUMBER

88-0400631                                    501

## TYPE OF PLAN

Employee Welfare Plan including:

Life Benefits
Accidental Death or Dismemberment Benefits

## TYPE OF ADMINISTRATION

The above listed benefits are insured by Metropolitan Life Insurance Company, ("MetLife").

## AGENT FOR SERVICE OF LEGAL PROCESS

For disputes arising under the Plan, service of legal process may be made upon the Plan administrator at the above address. For disputes arising under those portions of the Plan insured by MetLife, service of legal process may be made upon MetLife at one of its local offices, or upon the supervisory official of the Insurance Department in the state in which you reside.

## ELIGIBILITY FOR INSURANCE; DESCRIPTION OR SUMMARY OF BENEFITS

Your MetLife certificate describes the eligibility requirements for insurance under the Plan. It also includes a detailed description of insurance provided by MetLife under the Plan.

## PLAN TERMINATION OR CHANGES

The group policy sets forth those situations in which the Employer and/or MetLife have the right to end the policy.

The Employer reserves the right to change or terminate the Plan at any time. Therefore, there is no guarantee that you will be eligible for the benefits described herein for the duration of your employment. Any such action will be taken only after careful consideration.

Your consent or the consent of your beneficiary is not required to terminate, modify, amend, or change the Plan.

In the event your coverage ends in accord with the "When Benefits End" provision of your certificate, you may still be eligible to receive benefits. The circumstances under which benefits are available are described in your MetLife certificate.

The Vice-President shall be empowered to amend the Plan or any benefit under the Plan at any time by a written instrument signed by that Vice-President.

The Vice-President shall be empowered to terminate the Plan or any benefit under the Plan at any time.

**CONTRIBUTIONS**

The optional life insurance benefits are not combined for experience with the other insurance coverages.

No contribution is required for Basic Life and Accidental Death or Dismemberment Benefits.

You must make a contribution to the cost of Optional Life, Voluntary (Additional) Accidental Death or Dismemberment and Dependent Life Benefits.

The total premium rate for insurance provided under the Plan by MetLife is set by MetLife.

**PLAN YEAR**

The Plan's fiscal records are kept on a Plan year basis beginning each March 1st and ending on the last day of the next following February.

**QUALIFIED DOMESTIC RELATIONS ORDERS / QUALIFIED MEDICAL CHILD SUPPORT ORDERS**

You and your beneficiaries can obtain, without charge, from the Plan administrator a copy of any procedures governing Qualified Domestic Relations Orders (QDRO) and Qualified Medical Child Support Orders (QMCSO).

## CLAIMS INFORMATION

### Procedures for Presenting Claims for Benefits

All claim forms needed to file for benefits under the group insurance program can be obtained from the Employer who will also be ready to answer questions about the insurance benefits and to assist you or, if applicable, your beneficiary in filing claims. The instructions on the claim form should be followed carefully. This will expedite the processing of the claim. Be sure all questions are answered fully.

The completed claim form should be returned to the Employer who will certify that you are insured under the Plan and will then forward the claim form to MetLife.

When the claim has been processed, you or, if applicable, your beneficiary will be notified of the benefits paid. If any benefits have been denied, you or, if applicable, your beneficiary will receive a written explanation.

### Requesting a Review of Claims
### Denied In Whole or In Part

In the event a claim has been denied in whole or in part, you or, if applicable, your beneficiary can request a review of your claim by MetLife. This request for review should be sent to Group Insurance Claims Review at the address of MetLife's office which processed the claim within 60 days after you or, if applicable, your beneficiary received notice of denial of the claim. When requesting a review, please state the reason you or, if applicable, your beneficiary believe the claim was improperly denied and submit any data, questions or comments you or, if applicable, your beneficiary deems appropriate.

MetLife will re-evaluate all the information and you or, if applicable, your beneficiary will be informed of the decision in a timely manner.

## Routine Questions

If there is any question about a claim payment, an explanation may be requested from the Employer who is usually able to provide the necessary information.

## Discretionary Authority of Plan Administrator
## and Other Plan Fiduciaries

In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

## STATEMENT OF ERISA RIGHTS

The following statement is required by federal law and regulation.

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all participants shall be entitled to:

## Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan administrator's office and at other specified locations, all Plan documents governing the Plan, including insurance contracts and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan administrator, copies of documents governing the operation of the Plan, including insurance contracts and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan administrator is required by law to furnish each participant with a copy of this summary annual report.

## Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries.

No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

## Enforce Your Rights

If your claim for a welfare benefit is denied or ignored in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan administrator to provide the

materials and pay you up to $110.00 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court.

In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court.

If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court.

The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees.

If you lose, the court may order you to pay these costs and fees; for example, if it finds your claim is frivolous.

## Assistance with Your Questions

If you nave any questions about your Plan, you should contact the Plan administrator.  If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.  You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

★   ★   ★   ★

## FUTURE OF THE PLAN

It is hoped that the Plan will be continued indefinitely, but Park Place Entertainment Corporation reserves the right to change or terminate the Plan in the future. Any such action would be taken only after careful consideration.

The Board of Directors of Park Place Entertainment Corporation shall be empowered to amend or terminate the Plan or any benefit under the Plan at any time.

# MetLife®

Metropolitan Life Insurance Company
One Madison Avenue, New York, NY 10010-3690

BCR13073

Eff. 01/01/2002
Printed in U.S.A.

# STATE OF ARIZONA

ORIGINAL STATE COPY

STATE OF ARIZONA
DEPARTMENT OF HEALTH SERVICES - OFFICE OF VITAL RECORDS
CERTIFICATE OF DEATH

DEATH NO. D 102-

NAME OF DECEASED — A. FIRST: **GERALD** — B. MIDDLE: **LEE** — C. LAST: **SCHREFFLER** — SEX: Male — DATE OF DEATH: 3 **October 13, 2003**

RACE: **White** — WAS DECEDENT OF HISPANIC ORIGIN? B. **No** — IF YES, INDICATE MEXICAN, SPANISH, PUERTO RICAN, CUBAN, ETC. — WAS DECEASED EVER IN U.S. ARMED FORCES? 5. **No**

PLACE OF DEATH — A. COUNTY: **Mohave** — B. TOWN OR CITY: **Bullhead City** — C. HOSPITAL OR INSTITUTION: **Western Arizona Regional Medical Center** — D. ☒ IN PATIENT

DATE OF BIRTH: **June 8, 1951** — AGE (YEARS LAST BIRTHDAY): 8A. **52** — MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY): **Married** — SURVIVING SPOUSE: 10. **Susan Ecele**

STATE AND CITY OF BIRTH: **Meadville, PA** — CITIZEN OF WHAT COUNTRY? 12. **U.S.A.** — SOCIAL SECURITY NO.: 13. **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** — USUAL OCCUPATION: 14A. **Custodian** — KIND OF BUSINESS OR INDUSTRY: **Casino**

USUAL RESIDENCE — A. STATE: **Arizona** — B. COUNTY: **Mohave** — C. TOWN OR CITY: **Mohave Valley 86440** — HOW LONG IN ARIZONA? **20 Years** — EDUCATION HIGHEST GRADE COMPLETED

STREET ADDRESS OR R.F.D.: 15E. **10200 Happy Valley Rd.** — INSIDE CITY LIMITS? 15F. **No** — ON RESERVATION? 15G. **No** — PREVIOUS STATE OF RESIDENCE: 18. **California** — ELEMENTARY-SECONDARY (0-12): **12** — COLLEGE (1-4 or 5+)

FATHER'S NAME — A. FIRST: **Merle** — B. MIDDLE: **Denzel** — C. LAST: **Schreffler** — MOTHER'S MAIDEN NAME — A. FIRST: **Glaydce** — B. MIDDLE: **Blanche** — C. LAST: **Boyles**

INFORMANT'S SIGNATURE: **Catherine Robbins** — RELATIONSHIP TO DECEASED: 22. Public/ **Fiduciary** — ADDRESS: 23. **2301 Harrison St. Kingman, AZ 86401**

BURIAL, CREMATION, REMOVAL, OTHER (Specify): **Burial** — DATE: **03-13-2004** — CEMETERY OR CREMATORY - NAME/LOCATION: **Desert Lawn Memorial Gardens Mohave Valley, AZ 86440** — EMBALMER'S SIGNATURE: 27A. **Not Embalmed** — CERT. NO.

FUNERAL HOME — NAME AND ADDRESS: **Desert Lawn Funeral Home, 9250 S. Ranchero Lane, Mohave Valley, AZ 86440** — FUNERAL DIRECTOR: 29A. — CERT. NO. **394A**

(Physician section) 30. SIGNATURE AND TITLE — DATE SIGNED (Mo., Day, Year): **3/2/2004** — HOUR OF DEATH: 32. **5:35 AM**

(Medical Examiner section) 34. SIGNATURE AND TITLE — DATE SIGNED (Mo., Day, Year) — HOUR OF DEATH — PRONOUNCED DEAD (Mo., Day, Year) — PRONOUNCED DEAD (Hour)

NAME AND ADDRESS OF CERTIFIER, PHYSICIAN, MEDICAL EXAMINER OR TRIBAL LAW ENFORCEMENT AUTHORITY: 39. **M.S. Ghani, M.D. 2755 Silver Creek Road, Bullhead City, AZ** — AUTHORIZED FOR CREMATION: 40. ☒ No

DATE REGISTERED: 42. **3-2-04** — REG. FILE NO.: 43. **405** — REGISTRAR'S SIGNATURE: 44. **Sharon Former Deputy** — REG. DISTRICT: 45. **085-3** — DATE REC'D. IN STATE OFFICE

47. CAUSE OF DEATH — PART I:
A. IMMEDIATE CAUSE: **Cardio Pulmonary Arrest** — APPROX. INTERVAL: **Immediate**
B. DUE TO (OR AS A CONSEQUENCE OF): **Metastatic Esophageal adenocarcinoma** — **3 1/2 mo.**
C. DUE TO (OR AS A CONSEQUENCE OF): **Metastase to liver, lung & bone** — **3 1/2 mo.**

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I: 48.

AUTOPSY: 49. **No** — WAS CASE REFERRED TO MEDICAL EXAMINER: 50. **No**

MANNER OF DEATH: ☒ NATURAL CAUSES — ☐ HOMICIDE — ☐ ACCIDENT — ☐ PENDING INVESTIGATION — ☐ SUICIDE — ☐ UNDETERMINED

DATE OF INJURY — INJURY AT WORK? — DESCRIBE HOW INJURY OCCURRED — PLACE OF INJURY — WHERE LOCATED? — STREET ADDRESS — CITY OR TOWN — STATE

SUPPLEMENTARY ENTRIES: 58.

CERTIFIED COPY OF VITAL RECORDS

STATE OF ARIZONA
COUNTY OF MOHAVE } ss
DATE ISSUED **MAR 16 2004** — **Patty Mead**
PATTY MEAD
MOHAVE COUNTY REGISTRAR
MOHAVE COUNTY DEPARTMENT OF PUBLIC HEALTH

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, DEPARTMENT OF HEALTH SERVICES, PHOENIX, ARIZONA issued under the authority of A.R.S. 36-341, and by direction of:

This copy not valid unless prepared on engraved border displaying county seal in color and raised seal of issuing agency.

136830

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE


SEAL OF MOHAVE COUNTY ARIZONA 1864

James T. Hickey, Esq.
HICKEY & ASSOCIATES, PC
1528 Wazee Street, Ste. 200
Denver, Colorado  80202-1312
AZ State Bar No. 015453
Telephone  (303) 629-5300
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

SUSAN SCHREFFLER, an individual,   )
                                   )   No. CV04-1561-PCT-SMM
v.                                 )
                                   )   NOTICE OF SERVICE OF
METROPOLITAN LIFE INSURANCE        )   PLAINTIFF'S RULE 26(A)(1)
COMPANY, a New York corporation,   )   DISCLOSURE STATEMENT
and KIMBERLY MILLER, an            )
individual.                        )
                                   )
_____)
                                   )
METROPOLITAN LIFE INSURANCE        )
COMPANY, a New York corporation,   )
                                   )
v.                                 )
                                   )
KIMBERLY L. MILLER, SUSAN M.       )
SCHREFFLER, and FUNERAL            )
FUNDING OF MICHIGAN, a Michigan    )
corporation.                       )
_____)

Plaintiff hereby serves notice of filing Plaintiff's Disclosure Statement

to Defendant in accordance with Rule 26(a)(1) of the Federal Rules of Civil

Procedure.





-1-

DATED this 18th day of November, 2004.

HICKEY & ASSOCIATES, P.C.

By_____
    James T. Hickey, No. 015453
    1528 Wazee Street, Ste. 200
    Denver, CO  80202-1312

ATTORNEYS FOR PLAINTIFF

1  COPY of the foregoing MAILED
2  this 18th day of November, 2004 to:

3  Timothy R. Hyland, Esq.
   Stephanie L. Chilton, Esq.
4  Bess Kunz
5  3838 N. Central, Ste. 1500
   Phoenix, AZ  85012-1902
6  Attorneys for Defendant/Counterclaimant Metropolitan Life

7
   Keith Knochel, Esq.
8  Anthony Mullan, Esq.
9  Law Offices of Keith S. Knochel, P.C.
   P.O. Box 706
10 Bullhead City, AZ  86430-0706
   Attorneys for Defendant Miller
11

12 Mark A. Nadeau, Esq.
   Andrea L. Marconi, Esq.
13 Squire. Sanders & Dempsey, LLP
14 Two Renaissance Square
   40 North Central Ave., Ste. 2700
15 Phoenix, AZ  85004-4498
   Attorneys for Defendant Funeral Funding of Michigan
16

17
   By: Jessica Silja
18

19

20

21

22

23

24

25

-3-

EXHIBIT "5"



## CERTIFICATION OF VITAL RECORD

# STATE OF ARIZONA

ORIGINAL
STATE
COPY

**STATE OF ARIZONA**
DEPARTMENT OF HEALTH SERVICES • OFFICE OF VITAL RECORDS
**CERTIFICATE OF DEATH**

DEATH NO.
**D 102-**

| NAME OF DECEASED | A. FIRST | B. MIDDLE | C. LAST | SEX | DATE OF DEATH |
|---|---|---|---|---|---|
| | GERALD | LEE | SCHREFFLER | 2. Male | 1. October 13, 2003 |

RACE — White | WAS DECEDENT OF HISPANIC ORIGIN — No | IF YES, INDICATE MEXICAN, SPANISH, PUERTO RICAN, CUBAN, ETC | WAS DECEASED EVER IN U.S. ARMED FORCES? — 5. No

PLACE OF DEATH — A. COUNTY — Mohave | B. TOWN OR CITY — Bullhead City | C. HOSPITAL OR INSTITUTION — Western Arizona Regional Medical Center | DOA / DIED EMER. / IN PATIENT

DATE OF BIRTH — June 8, 1951 | AGE (YEARS LAST BIRTHDAY) — 5A. 52 | IF UNDER 1 YEAR MOS. DAYS | IF UNDER 1 DAY HRS. MIN. | MARRIED, NEVER MARRIED, WIDOWED, DIVORCED — 9. Married | SURVIVING SPOUSE — 10. Susan Ecele

PLACE OF BIRTH — Meadville, PA | CITIZEN OF WHAT COUNTRY? — 12. U.S.A. | SPECIFY | SOCIAL SECURITY NO. — 13. 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 | USUAL OCCUPATION — 14. Custodian | KIND OF BUSINESS OR INDUSTRY — a. Casino

USUAL RESIDENCE — A. STATE — Arizona | B. COUNTY — Mohave | C. TOWN OR CITY — Mohave Valley | D. ZIP CODE — 86440 | HOW LONG IN ARIZONA? — 20 Years | EDUCATION HIGHEST GRADE COMPLETED

STREET ADDRESS OF RES. — 10200 Happy Valley Rd. | INSIDE CITY LIMITS? — No | ON RESERVATION — No | STATE OF RESIDENCE — 18. California | ELEMENTARY-SECONDARY (0-12) — 12 | COLLEGE (1-4 or 5+)

FATHER'S NAME — A. FIRST — Merle | B. MIDDLE — Denzel | C. LAST — Schreffler | MOTHER'S MAIDEN NAME — A. FIRST — Glaydce | B. MIDDLE — Blanche | C. LAST — Boyles

INFORMANT'S SIGNATURE — Catherine Robbins | RELATIONSHIP TO DECEASED — Friend/ 21. Fiduciary | ADDRESS — STREET NO. 2301 Harrison St. | CITY AND STATE — Kingman, AZ | ZIP CODE — 86401

BURIAL, CREMATION, REMOVAL, OTHER — Burial | DATE — 03-13-2004 | CEMETERY OR CREMATORY - NAME/LOCATION — Desert Lawn Memorial Gardens, Mohave Valley, AZ 86440 | EMBALMER'S SIGNATURE — Not Embalmed | CERT. NO.

FUNERAL HOME — NAME — Desert Lawn Funeral Home | STREET ADDRESS — 9250 S. Ranchero Lane | CITY AND STATE — Mohave Valley, AZ 86440 | FUNERAL DIRECTOR OR PERSON ACTING AS SUCH (SIGNATURE) — 29A | CERT. NO. 394A

TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSE(S) STATED. | 30. SIGNATURE AND TITLE | DATE SIGNED (Mo., Day, Year) — 3 2004 | HOUR OF DEATH — 5:35 AM

ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION DEATH OCCURRED AT THE TIME, DATE AND PLACE DUE TO THE CAUSE(S) AND MANNER STATED. | 34. SIGNATURE AND TITLE | DATE SIGNED (Mo., Day, Year) | HOUR OF DEATH

NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or print) | PRONOUNCED DEAD (Mo., Day, Year) | PRONOUNCED DEAD (Hour) | 37. ON | 38. AT

NAME AND ADDRESS OF CERTIFIER, PHYSICIAN, MEDICAL EXAMINER OR TRIBAL LAW ENFORCEMENT AUTHORITY — M.S. Ghani ,M.D.2755 Silver Creek Road,Bullhead City,AZ | AUTHORIZED FOR CREMATION — Yes / No | MEDICAL EXAMINER'S SIGNATURE

DATE REGISTERED — 3-2-04 | REG. FILE NO — 405 | REGISTRAR'S SIGNATURE — Sharon Comer Deputy | REG. DISTRICT — 0853 | DATE REC'D. IN STATE OFFICE

| PART I | A. IMMEDIATE CAUSE (FINAL DISEASE OR CONDITION RESULTING IN DEATH) (ENTER ONLY ONE CAUSE ON EACH LINE) | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|
| | Cardiopulmonary arrest | Immediate |
| DUE TO OR AS A CONSEQUENCE OF: | Metastatic Esophageal adenocarcinoma | 3/2004 |
| DUE TO OR AS A CONSEQUENCE OF: | Metastase to liver, lung & bone | 3/2004 |

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I | AUTOPSY — 49. No | WAS CASE REFERRED TO MEDICAL EXAMINER — 50. No

MANNER OF DEATH — ☒ NATURAL CAUSES / ☐ HOMICIDE / ☐ ACCIDENT / ☐ PENDING INVESTIGATION / ☐ SUICIDE / ☐ UNDETERMINED | DATE OF INJURY — MO DAY YR | HOUR | INJURY AT WORK? | DESCRIBE HOW INJURY OCCURRED

PLACE OF INJURY (At home, farm, street, factory, office building, etc.) SPECIFY | WHERE LOCATED? STREET ADDRESS | CITY OR TOWN | STATE

SUPPLEMENTARY ENTRIES

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF ARIZONA
COUNTY OF MOHAVE } SS

DATE ISSUED **MAR 16 2004**

*Patty Mead*
PATTY MEAD
MOHAVE COUNTY REGISTRAR
MOHAVE COUNTY DEPARTMENT OF PUBLIC HEALTH

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, DEPARTMENT OF HEALTH SERVICES, PHOENIX, ARIZONA issued under the authority of A.R.S. 36-341, and by direction of:

This copy not valid unless prepared on engraved border displaying county seal in color and raised seal of issuing agency.

136831



EXHIBIT "6"

**ROBERT S MILLER**
**KIMBERLY L MILLER**
10200 HAPPY VALLEY RD
MOHAVE VALLEY, AZ 86440-9674

4702

90-7162/3222

9-24-03

PAY TO THE ORDER OF _Flamingo Laughlin_    $ 98.90

_Ninety Eight Dollars + 90/100_

**Washington Mutual**
Washington Mutual Bank, FA
Needles Financial Center 916
1019 Broadway
Needles, CA 92363
1-800-788-7000
24 Hour Customer Service

FOR _Gerald Schreffler / Sept. Ins._    _Kimberly L. Miller_

⑆322271627⑆ 9160027590⑈ 4702  ⑈0000009890⑈

---

**ROBERT S MILLER**
**KIMBERLY L MILLER**
10200 HAPPY VALLEY RD
MOHAVE VALLEY, AZ 86440-9674

4640

90-7162/3222

8-7-03

PAY TO THE ORDER OF _Flamingo Laughlin_    $ 167.80

_One Hundred Sixty Seven Dollars + 80/100_

**Washington Mutual**
Washington Mutual Bank, FA
Needles Financial Center 916  _emp #8151_
1019 Broadway
Needles, CA 92363
1-800-788-7000
24 Hour Customer Service

FOR _Gerald Schreffler Ins._    _Kimberly L. Miller_

⑆322271627⑆ 9160027590⑈ 4640  ⑈0800016780⑈

---

**ROBERT S MILLER**
**KIMBERLY L MILLER**
10200 HAPPY VALLEY RD
MOHAVE VALLEY, AZ 86440-9674

4708

90-7162/3222

10-16-03

PAY TO THE ORDER OF _Flamingo Laughlin_    $ 98.90

_Ninety Eight Dollars + 90/100_

**Washington Mutual**
Washington Mutual Bank, FA
Needles Financial Center 916  _Oct. 03 med. Ins._
1019 Broadway
Needles, CA 92363
1-800-788-7000
24 Hour Customer Service

FOR _Gerald Schreffler_    _Kimberly L. Miller_

⑆322271627⑆ 9160027590⑈ 4708  ⑈0000009890⑈

10/10/03  LA,CA
122000661        26
E1808  S36 3170O579110
6260081288

LA 10102003 02
PROCESSED

22295030

BANK OF AMERICA,NA LVG
1224007244 E6587 90 P09
00000990008903  10/09/03
2250363242

11/10/03  LA,CA
122000661        23
E5423  S34 3170O579110
5560043188



NOV - 7 03

BANK OF AMERICA,NA LVG
1224007244 E6566 90 P09
00000990008903  11/07/03
2350398497

11/10/03  LA,CA
122000661        23
E5423  S34 3170O579110
5560043187



NOV - 7 03

BANK OF AMERICA,NA LVG
1224007244 E6566 90 P09
00000990008903  11/07/03
2350398496