IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan SCHREFFLER,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY and Kimberly MILLER,<br><br>    Defendants.<br>_____<br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>Kimberly MILLER and Susan SCHREFFLER,<br><br>    Cross/Counter/Third-Party Defendants.<br>_____ | No. CV 04-1561-PCT-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is a Motion for Summary Judgment filed by Kimberly Miller [Doc. No. 76] and an Application for Entry of Order of Exoneration and Discharge of Interpleader, Permanent Injunction and Award of Costs and Attorneys' Fees by Defendant Metropolitan Life Insurance Company [Doc. No. 72]. After considering the arguments raised in the parties' briefs, the Court issues the following Memorandum of Decision and Order. Because the Court finds it would not be significantly aided by oral argument, the Court issues its Order without oral argument.

**BACKGROUND**

**A. Factual Background**

The following facts, except where noted, are undisputed.

Gerald Schreffler had life insurance through his employer Park Place Entertainment Corp., now known as Caesars Entertainment Corp., naming his wife, Susan Schreffler, as the sole beneficiary. (Ex. 1 to Mot. for Summ. J.) Mr. Schreffler was a participant in the Park Place Entertainment Corporation Employee Benefit Plan (the "Plan"), which is regulated by the Employee Retirement Income Security Act ("ERISA"), as amended. The insurance policy was administered by Metropolitan Life Insurance Company ("MetLife") and began on March 24, 2003. On August 7, 2003, Mr. Schreffler changed the beneficiary designation on this plan from Susan Schreffler ("Schreffler") to Kimberly Miller ("Miller"), with whom he resided during the last months of his life. (Ex. 2 to Mot. for Summ. J.)

Schreffler alleges that the change of beneficiary designation from herself to Miller was a result of undue influence on the part of Miller, who "was able to substitute her will and desire for that of Gerald Schreffler." (Compl. ¶ 17.) Schreffler contends that "[o]n the date of the change of beneficiary, Kimberly Miller drove Gerald Schreffler to his employer and actively assisted in the change of beneficiary to her favor." (Id. at ¶ 13.) Schreffler alleges that Miller "had almost unfettered control and influence of Gerald Schreffler's mind, decisions, and actions," (Id. at ¶ 14), and that "[a]t the time of the making and execution of the changes of beneficiary, Gerald Schreffler was not acting of his own free will but was responding instead to the dictates and influence of Kimberly Miller." (Id. at ¶ 18).

On October 13, 2003, Mr. Schreffler died from cancer which had set in three and a half months earlier. (Ex. 5 to Mot. for Summ. J.) At the time of his death, Mr. Schreffler was married to Schreffler, and Miller was the sole named beneficiary to the life insurance policy. (Exs. 2, 5 to Mot. for Summ. J.) On March 3, 2004, Schreffler filed a claim with MetLife seeking the proceeds of the life insurance policy taken out by her husband. (Ex. D to MetLife's Answer.) On March 25, 2004, Miller also filed a claim with MetLife seeking the proceeds of Mr. Schreffler's life insurance policy. (Ex. E to MetLife's Answer.) Through

letters dated June 4, 2004, MetLife informed both Schreffler and Miller of its inability to pay benefits under the Plan due to the competing claims. MetLife informed Schreffler that her claim for one-half of the benefits based on community property laws was denied and that it would have to interplead the $75,000 in life insurance benefits unless the parties could resolve the dispute themselves. MetLife also notified Miller that her claim for an additional $50,000 in optional life insurance benefits, over and above the $75,000 MetLife had calculated, was denied. Neither Miller nor Schreffler appealed those denials.

**B. Procedural Background**

Schreffler, now appearing *pro se*,[1] filed a Complaint against Defendants MetLife and Miller on July 30, 2004 seeking the proceeds of the life insurance policy. [Doc. No. 1] Schreffler seeks in relief a declaration and judgment that the change of beneficiary be set aside, that all proceeds due under the Plan be paid to her, and attorney's fees and costs.

On October 12, 2004, this Court preliminarily enjoined all parties from instituting or prosecuting any proceeding in any State or United States Court affecting the interpleaded property, other than this action, under further order of the Court. [Doc. No. 10] On October 19, 2004, MetLife deposited $76,134.24, the life insurance benefits due under the Plan plus accrued interest, with the Clerk of Court. [Doc. No. 13] This case was originally assigned to the Honorable Neil V. Wake, but he recused himself from the instant action on November 10, 2004. [Doc. No. 18]

On October 25, 2004, Miller asserted a cross-claim against MetLife for an additional $50,000 in optional life insurance benefits. [Doc. No. 14] MetLife subsequently filed a Motion to Dismiss that cross-claim for failure to exhaust administrative remedies [Doc. No. 49], which this Court granted on August 9, 2005 [Doc. No. 69].

---

[1] Schreffler initially filed her Complaint through her attorney, James Hickey, who passed away on March 12, 2005. Since the passing of Schreffler's attorney, the Court has provided Schreffler additional time to obtain counsel on three occasions [Doc. Nos. 62, 65, 69], finally denying her fourth Motion for additional time on February 17, 2006. [Doc. No. 83]

- 3 -

1 Miller filed a Motion for Summary Judgment under Rule 56(c) of the Federal Rules
2 of Civil Procedure on October 19, 2005, alleging that: (a) ERISA preempts state community
3 property law to the extent that a state law relates to an ERISA employee benefit plan; and (b)
4 even if ERISA did not preempt state community property laws, Schreffler could still not
5 prevail. [Doc. No. 76] On December 28, 2005, Schreffler filed her Response to the Motion
6 again alleging that the change of beneficiary to Miller was a result of undue influence on the
7 part of Miller. [Doc. No. 80]

8 Miller then filed a Reply on January 9, 2006, in which she pointed out several
9 deficiencies in Schreffler's Response, such as the lack of affidavits, lack of response to the
10 preemption argument, and lack of Schreffler's signature on the Response. [Doc. No. 81] In
11 her Reply, Miller moves the Court to: (1) strike and reject Schreffler's response because it
12 does not comport with Rule 56(e) of the Federal Rules of Civil Procedure; (2) deem the
13 factual allegations in Miller's affidavit and statement of undisputed facts in her Motion for
14 Summary Judgment as true; and (3) award attorney's fees to Miller with respect to the Motion
15 as a consequence of those deficiencies.[2] While it is true that Schreffler did not personally
16 sign her original response, she re-filed her signed Response on February 24, 2006. [Doc. No.
17 84] Despite the deficiencies in the Response, the Court recognizes that Schreffler is not
18 represented by counsel.  "Courts have a duty to construe pro se pleadings liberally."
19 Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003).  Therefore, the Court
20 will take into account Schreffler's *pro se* status and declines to grant the relief Miller seeks
21 in her Reply.

22 On October 14, 2005, MetLife filed an Application for Order of Exoneration and
23 Discharge of Interpleader, Permanent Injunction and Award of Costs and Attorneys' Fees.
24 [Doc. No. 72]  Miller responded on October 28, 2005 [Doc. No. 77], and MetLife filed its

---

[2]Miller captioned her Reply as a Motion to Strike, but filed it as her Reply.  Thus, the Court treats it as a Reply.  To the extent that it is a Motion to Strike, it is denied.

- 4 -

1  Reply on November 14, 2005 [Doc. No. 78]. The Court allowed Plaintiff until December 27,
2  2005 to respond to that Application [Doc. No. 79], but Plaintiff filed no Response.
3        Jurisdiction over this matter is proper under 28 U.S.C. § 1331, and venue is proper
4  under 28 U.S.C. § 1391(b)(2).

## MOTION FOR SUMMARY JUDGMENT

**A. Standard of Review**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the non-movant "may not rest upon the mere allegations or denials of [the party's] pleadings, but the [non-movant's] response, by affidavits

1 or as otherwise provided in this rule, must set forth specific facts showing that there is a
2 genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith
3 Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d
4 1044, 1049 (9th Cir. 1995).

**B. Discussion**

As stated *supra*, Schreffler bases her claims on Arizona community property laws. Miller, on the other hand, moves for summary judgment on two grounds. Miller contends that ERISA preempts Arizona community property law and therefore judgment as a matter of law is appropriate. Miller also argues that if ERISA does not preempt state law, the Plan proceeds are not community property and therefore Schreffler is not entitled to them. This Court first addresses preemption.

1. Whether ERISA Preempts State Law of Undue Influence

The Court notes at the outset that "ERISA contains one of the broadest preemption clauses ever enacted by Congress." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990). "In order to determine whether a state law is preempted, we must look at whether it encroaches on the relationships regulated by ERISA. It doesn't matter whether the state law regulates the relationship directly (by telling the parties what they can or cannot do) or indirectly (by imposing on the parties extra duties that flow from their conduct in this relationship)." San Francisco Culinary, Bartenders and Service Employees Welfare Fund v. Lucin, 76 F.3d 295, 298 (9th Cir. 1996) (internal quotation marks and citation omitted).

ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). To determine whether a state law "relates to" or "has a connection with" an ERISA plan, the Court looks "both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." Egelhoff v. Egelhoff ex. rel. Breiner, 532 U.S. 141, 147 (2001) (internal quotation marks and citation omitted); Boggs v. Boggs, 520

U.S. 833, 839-854 (1997) (ERISA preempts a Louisiana community property law which would have allowed a non-participant former-spouse to make a testamentary transfer of an interest in an undistributed plan benefit); Branco v. UFCW - N. Cal. Employers Joint Pension Plan, 279 F.3d 1154, 1157 (9th Cir. 2002) (state community property law having the effect of requiring ERISA plan benefits to pass to someone other than the designated beneficiary is preempted by ERISA).

In Egelhoff, the Court held that an impermissible connection with an ERISA plan exists where a state statute binds ERISA plan administrators to make payments to someone other than the beneficiary designated by the participant in the plan. 532 U.S. at 147. The Washington statute at issue in Egelhoff would have automatically revoked the deceased participant's beneficiary designation from petitioner (deceased's ex-wife) upon their divorce, although she remained the designated beneficiary at the time of participant's death. Id. at 143-46. The Court noted that "[o]ne of the principal goals of ERISA is to enable employers to establish a uniform administrative scheme . . . to guide processing of claims and disbursement of benefits." Id. at 148 (internal quotation marks and citation omitted). The Court found that the Washington statute had "a prohibited connection with ERISA plans because it interferes with nationally uniform plan administration." Id. Thus, ERISA preempted the Washington statute because it conflicted with (1) ERISA's goal of national uniformity, and (2) the plan's beneficiary designation. Id. at 148-150.

In her Complaint, Schreffler cites to TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691 (9th Cir. 2000), for the proposition that ERISA does not wholly preempt community property laws. Schreffler also cites to In re Estate of Agans, 998 P.2d 450 (Ariz. App. 1999), which holds that a change of designation to someone other than the employee's spouse runs counter to Arizona community property laws, thus resulting in constructive fraud. However, Knoebber was decided before Egelhoff and was overruled by Egelhoff to the extent that Knoebber would permit state community property laws to interfere with the distributions of benefits to the beneficiary designated by an ERISA plan. See Egelhoff, 532 U.S. at 147-150.

1 Therefore, Schreffler's reliance on In re Estate of Agans's holding that a change of
2 designation to someone other than the employee's spouse runs counter to the community
3 property laws of the state thus resulting in constructive fraud is misplaced. Application of
4 Arizona community property law would create an impermissible connection with the ERISA
5 plan and would run counter to Congress' goal of uniformity in enacting ERISA.

6 The Court therefore finds that Schreffler's claims to the proceeds of Mr. Schreffler's
7 life insurance policy are preempted because that they rely on Arizona community property
8 law and "relate to" the ERISA plan. Like the Washington statute in Egelhoff, any Arizona
9 community property law that would require funds of the Plan to be distributed to Schreffler
10 and not the designated beneficiary, Miller, is preempted by ERISA. Thus, judgment as a
11 matter of law is appropriate in favor of Miller.[3]

12 2. Federal Common Law of Undue Influence

13 Although Schreffler makes no specific claim under the federal common law of undue
14 influence, she cites in her Complaint to Tinsley v. General Motors Corp., 227 F.3d 700 (6th
15 Cir. 2000), for the proposition that "undue influence must be weighed before distribution of
16 any proceeds." (Compl. at 5 ¶¶ 13-15.) In the interest of completeness, this Court addresses
17 the issue of federal common law undue influence.

18 The Sixth Circuit stated in Tinsley that "[s]ince ERISA does not contain any
19 provisions regulating the problem of beneficiary designations that are . . . the result of undue
20 influence, or otherwise improperly procured, it appears that federal common law must apply
21 to . . . claims [of undue influence]." 227 F.3d at 704. The Tinsley court also noted that
22 where there is no federal common law established in the Circuit, it is appropriate to look to
23 state-law principles of undue influence for guidance. Id.

24 The Sixth Circuit decision in Tinsley is not binding on this Court, and the Court notes
25 that Tinsley was decided before Egelhoff. However, even if this Court were to follow

---

[3]Because the Court finds that ERISA preempts Arizona community property law, the Court need not address the parties' community property law arguments.

- 8 -

1  Tinsley's holding, Schreffler has provided no reliable evidence to show that Miller exerted
2  any undue influence over Mr. Schreffler.  Schreffler has merely made allegations based on
3  hearsay.  She has alleged that Mr. Schreffler "was actively denied access to Plaintiff and to
4  Plaintiff's relatives by Kimberly Miller" (Compl. at ¶ 15), and that "Gerald Schreffler's
5  change of beneficiary to Kimberly Miller was the result of undue influence on the part of
6  Kimberly Miller who was able to substitute her will and desire for that of Gerald Schreffler."
7  (Id. at ¶ 17.)  The only statement Schreffler provides to support a finding of undue influence
8  is her allegation that "[o]n the date of the change of beneficiary, Kimberly Miller drove
9  Gerald Schreffler to his employer and actively assisted in the change of beneficiary to her
10 favor from the designation [of Schreffler made] less than five months before."  (Id. at ¶ 13.)
11 However, this statement was not made in the form of an affidavit.  See FED. R. CIV. P. 56(e).
12 Schreffler may not rest upon the mere allegations of her pleadings; rather, her response, by
13 affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there
14 is a genuine issue for trial.  Id.  Because she has not provided any evidence, such as an
15 affidavit, stating anything based on her own personal knowledge that would support her
16 allegations, Schreffler's claim that Mr. Schreffler's change of beneficiary designation from
17 herself to Miller was a result of undue influence cannot survive the Motion for Summary
18 Judgment.

**D. Conclusion on the Motion for Summary Judgment**

The Court will grant Miller's Motion for Summary Judgment, as Schreffler's community property claims are preempted by ERISA.  Also, Schreffler's claims of undue influence are unsupported by evidence in the form of an affidavit and based on her personal knowledge.  Miller, as the beneficiary of the Plan, is thus entitled to the proceeds of the Plan.

**APPLICATION FOR ENTRY OF INTERPLEADER, PERMANENT INJUNCTION AND AWARD OF COSTS AND ATTORNEYS' FEES**

Metropolitan Life Insurance Company asks this Court for (1) a release and discharge from the interpleader, (2) that the injunction entered by this Court on October 12, 2004 be

1  made permanent, and (3) that it be awarded all of its attorneys' fees and costs in this matter.
2  [Doc. No. 72] The Court addresses each of those requests in turn.

### A. Discharge from Interpleader

MetLife first asks that this Court discharge it from the interpleader. Miller does not oppose this request, and Schreffler, despite having been afforded the opportunity to respond, did not do so. Because MetLife's request is unopposed and the Court finds such a discharge is proper under the circumstances and under 28 U.S.C. § 2361, the Court will order MetLife discharged from this matter.

### B. Permanent Injunction

MetLife also requests that this Court make permanent the injunction entered on October 12, 2004, in which the Court restrained the parties from instituting or prosecuting any proceeding in any State or United States Court affecting the interpleaded property. [Doc. No. 18] Miller opposes this request to the extent that it exceeds the amount of money already deposited by MetLife. MetLife, however, points out that it only seeks a permanent injunction as to the amount of money it has deposited in this matter. Because this Court's previous injunction only affected the interpleaded monies and the parties are in agreement that a permanent injunction should only affect the interpleaded monies, the Court will make permanent its previous October 12, 2004 injunction pursuant to 28 U.S.C. § 2361.

### C. Attorneys' fees and costs

Last, MetLife asks this Court to grant it all of its attorneys' fees and costs incurred in this case.

#### 1. Standard of Review

An award of attorney's fees and costs to a disinterested fiduciary in an interpleader case is proper under the law. See Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194 (9th Cir. 1962) ("the proper rule [] in an action in the nature of interpleader, is that the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading"); Gelfren v. Republic Nat'l Life Ins. Co., 680 F.2d 79, 81 (9th Cir.

1982) ("it is within the court's discretion to award costs to the stakeholder"); 29 U.S.C. § 1132(g)(1) (court in its discretion may allow reasonable attorney fees and costs for action brought by fiduciary in ERISA case).

Attorneys' fee awards to the disinterested interpleader plaintiff are typically modest. See, e.g., Schirmer Stevedoring, 306 F.2d at 194-95 (remanding for reduction of fee award of $5,000 from $48,000 interpleaded fund). Furthermore, "there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." Trs. of the Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000).

2. Discussion

MetLife moves for reimbursement of all its fees and costs, totaling $18,258.50. Schreffler has not responded to that request despite being provided an opportunity to do so by the Court. Miller agrees that MetLife is entitled to its fees and costs, but argues that the amount requested is excessive and goes against the public policy favoring modest fee awards in interpleader actions.

In Hummell v. S.E. Rykoff & Co., the Ninth Circuit intimated five factors that a court should consider when determining whether to award attorneys' fees in ERISA cases: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. 634 F.2d 446, 453 (9th Cir. 1980). The Court considers each factor in turn.

First, the Court must look at the culpability of Schreffler and Miller in bringing their claims. Id. The Court finds that assigning a degree of culpability to both Schreffler and Miller is appropriate in this case. Schreffler, who was represented by able counsel when she brought her Complaint, brought a state-law undue influence claim to the Plan benefits when

well-settled ERISA law dictates that state law would be preempted in this case. As to Miller, this Court has already found in a previous Order [Doc. No. 69] that Miller brought her cross-claim against MetLife despite having failed to exhaust her administrative remedies before doing so. MetLife moved this Court to dismiss the cross-claim for failure to exhaust administrative remedies, which this Court granted on August 9, 2005. [Id.] Therefore, the Court assigns a degree of culpability to both Schreffler and Miller, and this factor weighs in favor of awarding attorneys' fees to MetLife.

Next, the Court considers the ability of Schreffler and Miller to satisfy an award of attorneys' fees. Hummell, 634 F.2d at 453. Schreffler has not responded to MetLife's Motion, so her financial position is unknown to the Court. Miller contends that she is financially unable to pay MetLife's attorneys' fees. This factor therefore weighs against awarding attorneys' fees, but the Court is mindful that the fees may be deducted from the interpleaded funds currently held in the Court's registry.

Third, the Court looks at whether an award of fees against Schreffler and Miller would deter others from acting under similar circumstances. Id. The Court finds that awarding fees would deter future litigants from bringing actions when their claims are preempted by ERISA or asserting cross-claims before they exhaust their administrative remedies. Therefore, the Court finds this factor weighs in favor of awarding attorneys' fees.

Fourth, the Court considers whether MetLife sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA in this action. Id. While MetLife did not resolve a significant legal question in this case, the Court finds that MetLife sought to benefit the participants and beneficiaries of the Plan at issue in this case by promptly interpleading the funds and acting diligently in this case. Thus, the Court finds this factor also weighs in favor of awarding MetLife attorneys' fees.

Last, the Court must examine the relative merits of the parties' positions. Id. On balance, the Court finds that MetLife's claims were the most meritorious, given its attempts to interplead the funds and exit this case. MetLife was brought into this suit by Schreffler's

claims, which the Court has deemed in this Order as lacking merit. Because of Miller's (ultimately unsuccessful) cross-claim in part, MetLife was compelled to remain in this matter. Therefore, the Court finds that this factor also weighs in favor of granting attorneys' fees to MetLife.

Because the Court finds that at least four of the five Hummell factors support an award of attorneys' fees to MetLife, the Court will consequently award those. However, the Court must decide the amount of fees to award MetLife. As stated above, public policy favors a modest award in interpleader cases. See Trs. of the Dirs. Guild of Am.-Producer Pension Benefits Plans, 234 F.3d at 427. However, the Court finds that this case differs from the garden-variety interpleader case, in that Miller asserted a cross-claim against MetLife that was dismissed for failure to exhaust administrative remedies. Thus, Miller's actions are a contributing factor to the high attorneys' fees expended by MetLife in this action.

Upon review of MetLife's timesheets, the Court finds that $10,000.00 is a reasonable and appropriate award for the time expended by MetLife in bringing the interpleader, defending against Miller's cross-claim, and spearheading the parties' case management efforts after the Court's August 9, 2005 Order. Therefore, the Court will grant in part MetLife's Application for Attorneys' Fees. MetLife will be awarded $10,000.00 of the $76,134.24 held in the Court's registry, and Miller, as beneficiary of the Plan proceeds, will receive the remaining $66,134.24.

**CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Kimberly Miller's Motion for Summary Judgment [Doc. No. 76] is **GRANTED**.

**IT IS FURTHER ORDERED** that Miller shall receive $66.134.24 of the $76,134.24 currently held in the Court's registry in this matter.

**IT IS FURTHER ORDERED** that Metropolitan Life Insurance Company's Application for Entry of Order of Exoneration and Discharge of Interpleader, Permanent

1  Injunction and Award of Costs and Attorneys' Fees by Defendant Metropolitan Life
2  Insurance Company [Doc. No. 72] is **GRANTED** in part.
3      **IT IS FURTHER ORDERED** that Metropolitan Life Insurance Company is hereby
4  discharged from this matter.
5      **IT IS FURTHER ORDERED** that all parties to this action are permanently enjoined
6  from instituting or prosecuting any proceeding in any State or United States Court affecting
7  the interpleaded property.
8      **IT IS FURTHER ORDERED** that Metropolitan Life Insurance Company is entitled
9  to an award of $10,000.00 in reasonable attorneys' fees and costs in litigating this matter, to
10 be deducted and paid from the lump sum payment of $76,134.24 held in the Court's registry.
11     **IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action.
12     DATED this 25th day of April, 2006.

_____
Stephen M. McNamee
Chief United States District Judge